UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC. ) <br> ) <br> and ) <br> ) <br> HEALTHLINK, INC. ) <br> ) <br> v. ) <br> ) <br> DOMINION ENERGY ) <br> NEW ENGLAND, INC., ) <br> ) <br>         Defendant. ) <br> ) | Case No. 1:10-cv-11069 <br><br> COMPLAINT |

## I. INTRODUCTION

1.   This is a citizen suit, brought under Section 304 of the Clean Air Act ("CAA"), as amended, 42 U.S.C. § 7604.  Plaintiffs Conservation Law Foundation ("CLF") and Healthlink, Inc. ("Healthlink"), collectively, Plaintiffs, seek a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys and expert witness fees, for repeated violations by Dominion Energy New England, Inc. ("Dominion" or "Defendant") of emissions standards and permit conditions included in the Massachusetts State Implementation Plan ("SIP") and in the permits issued to Defendant under the CAA at its Salem Harbor Station plant ("Salem Power Plant") located in Salem, Massachusetts.

## II. JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a)(1) and 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.  The

relief requested by the plaintiffs is authorized by 42 U.S.C. §§ 7413 and 7604 and 28 U.S.C. §§ 2201 and 2202.

3.      Pursuant to Section 304(b)(1)(A) of the CAA, 42 U.S.C. §7604(b)(1)(A), and 40 C.F.R. § 54, Plaintiffs notified Defendants of their violations of the CAA and of Plaintiffs' intent to sue under the CAA by letter dated January 27, 2010 and sent to them via certified mail ("Notice Letter"), and an amended notice of intent to sue ("Amended Notice Letter") dated April 20, 2010 and sent via certified mail.  A true and accurate copy of the Amended Notice Letter is attached as Exhibit 1.  Plaintiffs also sent copies of the Amended Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region I, the Commissioner of the Massachusetts Department of Environmental Protection, the Governor of Massachusetts, and the Resident Agent of Dominion.

4.      More than sixty days have passed since the Plaintiffs mailed Defendant the Amended Notice Letter.  The CAA violations complained of in the Amended Notice Letter are of a continuing nature, are ongoing, or are reasonably likely to recur.  Defendants remain in violation of the CAA.  As of the filing of this Complaint, neither EPA nor Massachusetts has commenced an enforcement action to redress the violations identified in the Amended Notice Letter.

5.      Venue is proper in the District of Massachusetts pursuant to Section 304(c)(1) of the CAA and 28 U.S.C. § 1391(b)(2) because the facility and the violations that are the subject of this complaint are located in Massachusetts.

### III.  PARTIES

6.      Plaintiff, CLF, is a nonprofit, member-supported organization incorporated under the laws of Massachusetts with a principal place of business at 62 Summer Street, Boston, MA 02110.  CLF is a regional organization with 3,309 members and is dedicated to protecting New

England's environment. CLF has a long history of working to reduce the harmful air emissions of coal-fired and other fossil-fuel fired power plants through enforcement of the CAA on behalf of its members.

7.      Plaintiff, HealthLink, is a non-profit, member-supported organization incorporated under the laws of Massachusetts with a principal place of business at P.O. Box 301, Swampscott, MA 01907. HealthLink is a Massachusetts North Shore citizens group with a long history of working to protect and improve public health by reducing or eliminating environmental toxins and pollutants through research, education and community action.

8.      CLF and HealthLink each meet the definition of a "person," pursuant to section 302(e) of the Act, 42 U.S.C. § 7602(e), who may commence an action under section 304(a) of the Act, 42 U.S.C. § 7604(a). CLF sues on behalf of itself and its individual members who live in the vicinity of and downwind of the plant and on behalf of HealthLink and its members. CLF and its members and HealthLink and its members have suffered, and will continue to suffer, actual and threatened injury to their health and welfare due to the violations of the CAA, the Massachusetts SIP, state operating permits issued by Massachusetts pursuant to the SIP and the CAA Title V program described herein. CLF members and HealthLink members are exposed to, and threatened with exposure to, particles and other pollution from the Salem Power Plant. As a result, CLF members and HealthLink members suffer from, and are at increased risk of, a variety of adverse health effects that are attributable to particulate matter pollution.

9.      Further, CLF members and HealthLink members have suffered, and will continue to suffer, actual and threatened interference with their use and enjoyment of property and surrounding areas from the violations alleged in this Complaint including, but not limited to atmospheric deposition of air pollutants on their property and diminution of property value.

10. The acts and omissions alleged herein expose CLF members and HealthLink members to harmful pollution that threatens their health and welfare, interferes with their use and enjoyment of property and the surrounding areas, injures their economic interests, denies them protection of their health and well-being guaranteed by the CAA, the Massachusetts SIP, state operating permits and the Title V permit issued under these authorities, and negatively impacts their aesthetic and recreational interests. The relief requested herein will redress these injuries.

11. Defendant Dominion Energy New England, Inc. is the owner and operator of the Salem Power Plant, a coal- and oil-fired electricity generating station with four combustion units.

## IV.  STATUTORY BACKGROUND

12. The purpose of the CAA is the protection and enhancement of the Nation's air resources to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1), Clean Air Act, § 101(b)(1).

13. Under the CAA, states bear the primary responsibility for regulating sources of air pollution. *See* 42 U.S.C. § 7401.

14. Section 110(a) of the Act, 42 U.S.C. § 7410(a), provides for state implementation of certain regulatory requirements of the Act, including by requiring regulated facilities, such as the Salem Power Plant, to comply with emissions limitations and emissions monitoring requirements. *See* 42 U.S.C. § 7410(a)(2). SIPs must satisfy the requirements of the Act before they receive EPA approval. *See* 42 U.S.C. § 7410(k); *see also* 40 C.F.R. § 51.110, Appendix V.

15. Massachusetts has adopted a SIP to fulfill its obligations under the CAA. *See* 40 C.F.R. § 52.1120.

16. In addition, Massachusetts has adopted an operating permit program under Title V of the CAA, Sections 501–506, 42 U.S.C. § 7661, and the EPA has approved this program. *See* 40

C.F.R. § 70, App. A ("Massachusetts"); 66 Fed. Reg. 49541-03 (2001).  Title V permits for major sources, such as Salem Power Plant, must include in the permit all applicable requirements imposed on the facility under the CAA for all relevant emissions units in the major source.  40 C.F.R. § 70.3(c)(1).

17. The Title V Permit issued for the Salem Power Plant took effect on October 8, 2009 and incorporated applicable portions of the SIP as well as permit conditions from earlier state operating permits issued by the State ("State Operating Permits").

18. The Massachusetts SIP provision that establishes visible emissions limitations from stationary sources other than incinerators is set forth at 310 Mass. Code Regs. 7.06.  The EPA has approved and incorporated 310 Mass. Code Regs. 7.06(1)(a)–(b) of Massachusetts' visible emissions regulations into the Massachusetts SIP.  *See* 40 C.F.R. § 52.1120(c)(4); 37 Fed. Reg. 23,085 (1972).[1]

19. Under 310 Mass. Code Regs. 7.06, opacity shall not "exceed twenty per cent (20%) opacity for a period or aggregate period of time in excess of two minutes during any one hour provided that, at no time during the said two minutes shall opacity exceed 40%."  310 Mass. Code Regs. 7.06(1)(b).  The Massachusetts SIP also prohibits the emission of smoke with a density equal to or greater than No. 1 of the Ringelmann Chart for a period, or aggregate period of time in excess of six minutes during any one hour, provided that at no time shall the shade, density or appearance be equal to or greater than No. 2 of the Ringelmann chart.  310 Mass. Code Regs. 7.06(1)(a).

20. In addition to these federally approved SIP provisions, Massachusetts established opacity limitations for the Salem Power Plant under previous State Operating Permits and incorporated

---

[1] Although *see* 68 Fed. Reg. 33875 (2003); 68 Fed. Reg. 16,959 (2003); 49 Fed. Reg. 49,454 (1984); 45 Fed. Reg. 53,476 (1980); 44 Fed Reg. 7,712 (1979).

those limitations into the newly effective Title V permit, issued pursuant to CAA Sections 501–506, 42 U.S.C. § 7661, for the Salem Power Plant.

21. The State Operating Permit for Units 1–3 establishes an opacity limitation at equal to or greater than 20% opacity (excluding the first six one-minute average opacities between 20% and 40% in each hour), and at no more than 40% at any time. *See* MBR-95-COM-017, §§ 8 and 10.a–b, pp. 8–9 (June 28, 1996) (Exhibit 2).

22. Under the State Operating Permit for Unit 4, the emissions may not exceed 15% opacity for a period or aggregate period of time in excess of any six individual minutes during any one hour, and may not exceed 40% at any time. *See* MBR-91-COM-029, §§ 10 and 12.a-b, p. 6 (January 29, 1992) (Exhibit 3).

23. These State Operating Permits were issued under 310 Mass. Code Regs. 7.02, a federally approved provision of the Massachusetts SIP and are therefore also enforceable through the citizen suit provision of the CAA. *See* 40 C.F.R. § 52.1120(c)(2); 37 Fed. Reg. 23,085 (1972).

24. As noted above, the Department included these State Operating Permit limits in the Title V permit by reference. *See* Title V Permit at Table 3, pp. 5-6 (Exhibit 4).

25. The Title V permit also incorporated the limitations established in 310 Mass. Code Regs. 7.06 as "facility-wide" opacity limitations. *See* Title V Permit at Table 3, p. 6 (Exhibit 4).

26. The Massachusetts SIP provides that any person who owns or operates an emission source as described in 40 C.F.R. § 51, Appendix P, such as fossil fuel fired steam generators, "shall comply with the minimum requirements for continuous emission monitoring, recording, and reporting as set forth therein for opacity." 310 Mass. Code Regs. 7.14(2).

27. The State Operating Permits include additional requirements for continuous emission monitoring, recordkeeping and reporting of compliance with the opacity limitations.

28. Under the State Operating Permit for Units 1–3, opacity is required to be measured by a continuous emission monitor ("CEM," also known as a "COM" (continuous opacity monitor)). *See* MBR-95-COM-017, § 8, p. 8 (June 28, 1996) (Exhibit 2). In the event of a CEM malfunction, the "opacity shall be determined in accordance with U.S. EPA Test Method 9, as specified in 40 C.F.R. 60, Appendix A." *Id.* Method 9 readings are also required for any detached plumes (i.e., where an emissions plume appears to be "detached" from the stack). *See id.*

29. The State Operating Permit for Unit 4 requires compliance with opacity limitations to be determined in accordance with U.S. EPA Test Method 9 as well. *See* MBR-91-COM-029, § 10, p. 6 (January 29, 1992) (Exhibit 3). Method 9 readings are also required for any detached plume. *See id.*

30. The Title V Permit incorporates the continuous monitoring, reporting and recordkeeping requirements from 310 Mass. Code Regs. 7.14 as well as the State Operating Permit requirements referenced in Paragraphs 27–28. *See* Title V Permit, Table 4, §§ 16–17, p. 12 (Exhibit 4).

31. Section 304(a)(1) of the CAA provides for citizen suits to redress the violation of an "emission standard or limitation" under the CAA, which is defined in Section 304(f) of the CAA, 42 U.S.C. § 7604(f)(4).

32. As standards or limitations under the Massachusetts SIP, the visible emission standards cited in Paragraphs 18–19 above and the monitoring requirements cited in Paragraphs 28–29 above constitute "emission standards or limitations" under 42 U.S.C. § 7604(f)(4) that are subject to citizen suit under 42 U.S.C. § 7604(a).

33. As standards or limitations set forth in State Operating Permits issued pursuant to regulation 310 Mass. Code Regs. 7.02, a portion of the federally approved SIP, the visible emissions limitations and monitoring requirements contained in the State Operating Permits (referenced at Paragraphs 20–23 and Paragraphs 28–29 above) constitute "emission standards or limitations" under 42 U.S.C. § 7604(f)(4) that are subject to citizen suit under 42 U.S.C. § 7604(a).

34. As a standard or limitation established under a permit in effect pursuant to CAA Title V and/or the Massachusetts SIP, the visible emissions limitations and monitoring requirements contained in the Title V Permit (referenced at Paragraphs 24-25 and Paragraph 30 above) constitute "emission standards or limitations" under 42 U.S.C. § 7604(f)(4) that are subject to citizen suit under 42 U.S.C. § 7604(a)(1).

35. The CAA provides for civil penalties of up to $32,500 per violation per day for violations occurring on or after March 15, 2004 and up to $37,500 per violation per day for violations occurring on or after January 12, 2009. *See* 42 U.S.C. § 7413(b), 7413(e), and 7604(a); 40 C.F.R. §§ 19.2 and 19.4 (2008).

### V.  CLAIMS FOR RELIEF

#### Count 1:  Visible Emission Violations of State Implementation Plan

36. The allegations in all of the preceding paragraphs are incorporated herein by reference.

37. Since at least January 5, 2005, emissions from Boilers 1–3 at the plant have repeatedly violated and are in violation of the visible emissions standards in the Massachusetts SIP by emitting air pollution with opacity of greater than 20% for an aggregate of 2 minutes and by emitting air pollution with opacity of greater than 40%. *See* Quarterly Excess Emissions Reports from 2005 through 2009 (Exhibit 5).

38.     Since at least June 27, 2007, emissions from Boiler 4 at the plant repeatedly have violated and are in violation of the visible emissions standards in the Massachusetts SIP by emitting air pollution with opacity greater than 20% for an aggregate of 2 minutes and by emitting air pollution with opacity of greater than 40%.  *See* Exhibit 5.

39.     These violations constitute violations of the Massachusetts SIP and of "emissions standards and limitations" under the CAA, 42 U.S.C. § 7604(f)(4).

### Count 2: Visible Emission Violations of State Operating Permits

40.     The allegations of all preceding paragraphs are incorporated herein by reference.

41.     Upon information and belief, Defendants repeatedly have violated and are in violation of visible emissions limitations contained in the State Operating Permits referenced in Paragraphs 21–22.

42.     Since at least January 5, 2005, emissions from Boilers 1–3 at the plant repeatedly have violated and are in violation of the visible emissions standards established in the State Operating Permits by emitting air pollution with opacity of greater than 20% and less than 40% (excluding six minutes in any hour) and by emitting air pollution with opacity of greater than 40%.  *See* Exhibit 5.

43.     Since at least June 27, 2007, emissions from Boiler 4 at the plant repeatedly have violated and are in violation of the visible emissions standards in the State Operating Permits by emitting air pollution with opacity greater than 15% and less than 40% (excluding six minutes in any hour) and by emitting air pollution with opacity of greater than 40%.  *See* Exhibit 5.

44.     These violations of visible emissions standards in these State Operating Permits issued pursuant to the Massachusetts SIP constitute violations of "emissions standards and limitations" under the CAA, 42 U.S.C. § 7604(f)(4).

### Count 3: Visible Emission Violations of Title V Permit

45. The allegations of all preceding paragraphs are incorporated herein by reference.

46. Upon information and belief, Defendants repeatedly have violated and are in violation of visible emissions limitations contained in the Title V permit referenced in Paragraphs 23–24.

47. These violations of visible emissions standards in the Title V permit constitute violations of "emissions standards and limitations" under the CAA, 42 U.S.C. § 7604(f)(4).

### Count 4: Violations of Monitoring Requirements of SIP

48. The allegations of all preceding paragraphs are incorporated herein by reference.

49. The Massachusetts SIP requires all emissions sources including fossil fuel generating units to comply with all continuous monitoring, recordkeeping and reporting requirements contained at 40 C.F.R. 51, Appendix P.  *See* 310 Mass. Code Regs. 7.14(2).

50. Upon information and belief, Defendants repeatedly have violated and are in violation of the monitoring, recordkeeping and reporting requirements contained at 310 Mass. Code Regs. 7.14 (2) by failing to continuously monitor opacity during periods of opacity monitor downtime.

### Count 5: Violations of Monitoring Requirements of State Operating Permits

51. The allegations of all preceding paragraphs are incorporated herein by reference.

52. The State Operating Permit for Units 1–3 requires the use of CEMS to ensure compliance with opacity limitations, and provides for Method 9 readings as an alternative in the event of a CEMS malfunction or detached plume.

53. Upon information and belief, defendants repeatedly have violated and are in violation of the monitoring requirements applicable to Units 1–3 by failing to continuously monitor opacity during periods of opacity monitor downtime and by failing to take Method 9 readings during all periods of opacity monitor downtime and all instances of detached plumes.

54. The State Operating Permit for Unit 4 requires the use of Method 9 readings to ensure compliance with opacity limitations.

55. Upon information and belief, defendants repeatedly have violated and are in violation of the monitoring requirements applicable to Unit 4 by failing to continuously monitor opacity through Method 9 readings.

### Count 6:  Violations of Monitoring Requirements of Title V Permit

56. The allegations of all preceding paragraphs are incorporated herein by reference.

57. The Title V Permit for the Salem Power Plant includes the continuous monitoring, recordkeeping and reporting requirements of the SIP and the State Operating Permits.

58. The Title V Permit requires the use of CEMS to ensure compliance with opacity limitations and for Method 9 readings in the event of a CEMS malfunction or detached plume.

59. Upon information and belief, defendants repeatedly have violated and are in violation of the monitoring requirements contained in the Title V permit by failing to continuously monitor opacity during periods of opacity monitor downtime and by failing to take Method 9 readings during all periods of opacity monitor downtime and all instances of detached plumes.

### PRAYER FOR RELIEF

WHEREFORE, based upon the allegations contained in paragraphs 1–59 above, Plaintiffs request that this Court:

1. Declare that Defendant Dominion Energy New England, Inc. has violated the Clean Air Act by exceeding the visible emissions limitations contained in the Massachusetts SIP, the State Operating Permits and the Title V Permit.

2. Declare that Defendant has violated and continues to be in violation of monitoring requirements set forth in the Massachusetts SIP, the State Operating Permits and the Title V Permit;

3. Enjoin Defendant from further violations of these standards and requirements;

4. Order Defendant to take all necessary steps to comply with emission standards, including, but not limited to, installing adequate pollution controls and developing protocols and processes to eliminate opacity violations;

5. Order Defendant to take all necessary steps to comply with monitoring requirements;

6. Order Defendant to pay civil penalties of no less than $10,792,500 for the 317 violations referenced in the Amended Notice of Intent, as well as the maximum civil penalties for any additional violations identified during the course of this proceeding;

7. Award Plaintiffs their reasonable costs and attorneys' fees; and

8. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

CONSERVATION LAW FOUNDATION
and HEALTHLINK

By Its Attorneys:

/s/ Shanna Cleveland
Shanna M. Cleveland (BBO # 647795)
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
617-850-1700
Fax: 617-350-4030
scleveland@clf.org

/s/ Susan M. Reid
Susan M. Reid (BBO# 647807)
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
617-850-1700
Fax: 617-350-4030
sreid@clf.org

Dated:  June 24, 2010